Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 9178 | **DATE** | 3/16/2004 |
| **CASE TITLE** | Hubbard vs. Certified Grocers | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held. No one appeared on behalf of the plaintiff on the Court's noticed status hearing. For the reasons stated in the attached memorandum opinion, the Court hereby grants defendant's motion for summary judgment and denies plaintiff's motion for summary judgment. All pending dates and motions are hereby stricken as moot. Terminating case. Enter Memorandum Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 17 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 39 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| MW6 | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

LATROY HUBBARD,            )
                           )
            Plaintiff,     )
                           )
      v.                   )   No. 02 C 9178
                           )
CERTIFIED GROCERS MIDWEST, )
INC.,                      )
                           )
            Defendant.     )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Latroy Hubbard's ("Hubbard") and Defendant Certified Grocers Midwest, Inc.'s ("Certified") cross-motions for summary judgment. For the reasons stated below we grant Certified's motion and deny Hubbard's motion.

## BACKGROUND

Hubbard is an African-American male. He began his employment with Certified in September of 1994 as an Order Selector ("OS"). In 1994, pursuant to a collective bargaining agreement, there was a minimum level of production for

1

selector/loaders. Selector/loaders were required to perform at a production rate to meet 85% of a set production standard called an "Engineered standard." Each shift that a selector/loader failed to meet the minimum production standard, he received a disciplinary step. After he got to the seventh step, his employment could be terminated under the collective bargaining agreement. A selector/loader could move back one step if he met the productivity standard for eight consecutive days.

Hubbard admits that on August 11, 2002 he began work at 5:30 p.m. and around 11:00 p.m., after four and one-half hours of work, he told John Saban ("Saban"), his supervisor, that his "back locked up in the freezer." (CSF 47). Hubbard went to the emergency room and returned from his doctor with a note. He was excused from the remainder of the shift. Saban evaluated Hubbard's work productivity for the four and a half hours he worked and found that Hubbard did not meet the minimum productivity standard. Since, the productivity deficiency moved Hubbard to the seventh step, his employment was terminated. After his termination Hubbard filed an Illinois Workers' Compensation Act ("IWCA") claim and a discrimination claim with the Equal Employment Opportunity Commission ("EEOC"). In the instant action Hubbard has filed complaint alleging that Certified discriminated against him because of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, (Count I), and that he suffered a

retaliatory discharge because he filed an IWCA claim (Count II). Both Hubbard and Certified have moved for summary judgment.

## LEGAL STANDARD

Summary Judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole in a light most favorable to the nonmoving party and draw all reasonable inferences that favor the nonmoving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

I. Race Discrimination Claim

Hubbard argues he is entitled to summary judgment because Certified terminated him in violation of Title VII. A plaintiff can defeat a summary judgment clam brought by an employer in a Title VII discrimination case by proceeding under the direct or indirect method of proof in order to defeat the motion. *Pafford v. Herman*, 148 F.3d 658, 665 (7th Cir. 1998). Under the direct method, the plaintiff can show through direct or circumstantial evidence that the alleged harmful action of the employer was "motivated by an impermissible purpose, such as [his] race or national origin." *Id.* Under the indirect method the plaintiff must establish a *prima*

*facie* case which will allow an inference of discrimination. *Id.* Hubbard does not present sufficient evidence to proceed under the direct evidence method and will therefore, need to proceed under the indirect method.

Under the *McDonnell Douglas* indirect approach, in order to defeat a motion for summary judgment the plaintiff must make out a *prima facie* case of race discrimination by showing that: (1) he was a member of a protected class; (2) he was performing his job satisfactorily; (3) he experienced an adverse employment action; and (4) similarly situated individuals "not in the protected class were treated more favorably." *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003). If a plaintiff establishes a *prima facie* case of discrimination, the employer must then provide a legitimate, non-discriminatory reason for the adverse employment action. *Hildebrandt v. Ill. Dept. of Nat. Res.*, 347 F.3d 1014, 1030 (7th Cir. 2003) (citing *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002)). If the employer does so, the plaintiff must then present sufficient evidence to prove that the explanation is pretextual. *Id.*

Certified admits that Hubbard is a member of a protected class and that his termination constitutes an adverse employment action. However, Certified argues that Hubbard failed to meet Certified's legitimate expectations, and that Hubbard has failed to show that similarly situated employees outside the protected class were

treated more favorably or that Certified's reason for his termination is a pretext.

### A. Whether Hubbard Met Certified's Legitimate Expectations

Certified argues that Hubbard failed to meet Certified's legitimate job-related expectations. There is ample evidence to support Certified's contention. Certified asserts in its 56.1 statement of material fact number 30 that "[d]espite being one of the more senior selectors, Hubbard had problems meeting the production standards and was suspended numerous times for productivity, and came close to termination several times." Pursuant to Local Rule 56.1 this fact is deemed to be admitted because Hubbard failed to provide a proper citation to support his denial. Pursuant to Local Rule 56.1, when a party files a motion for summary judgment each party must prepare a statement of material facts and each party is required to respond to the opposing party's statement of material facts and either admit or deny each fact. A denial is improper if the denial is not accompanied by specific references to admissible evidence or at least evidence that represents admissible evidence. *Dent v. Bestfoods*, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003); *Malec v. Sanford*, 191 F.R.D. 581, 584-85 (N.D. Ill. 2000). Pursuant to Rule 56.1 any facts included in a party's statement of facts that are not properly denied by the opposing party are deemed to be admitted. Local Rule 56.1; *Dent*, 2003 WL 22025008, at *1 n.1.

Hubbard's response to Certified's statement of fact number 30 was that his performance was good and the only support he provides for his denial was his own affidavit. However, Hubbard's own self-assessment of his work performance is irrelevant, because the issue is whether he was meeting the expectations of Certified and whether or not the expectations were reasonable. *See Rabinovitz v. Pena*, 89 F.3d 482, 487 (7th Cir. 1996)(indicating that a plaintiff's "own opinions about his performance or qualifications [does not] give rise to a material factual dispute."); *Abioye v. Sundstrand Corp.*, 1997 WL 795850, at *5 (N.D. Ill. 1997)(stating that a "plaintiff's own opinion of his job abilities carries no weight in showing he performed up to legitimate expectations."). Also, Hubbard simply cites the entirety of his affidavit and fails to specify which portion supports his denial.

Furthermore, Hubbard's denial of fact number 30 is inconsistent with this deposition testimony where he stated: "I can remember being threatened with termination plenty of times, but I remember being suspended numerous times for not making case counts. But I was always threatened with termination during standards time. . . ." (P Dep. 22). *See Russell v. Acme-Evans Co.*, 51 F.3d 64, 67-68 (7th Cir. 1995)(stating that to the extent that an affidavit is inconsistent with the affiant's deposition testimony the affidavit should not be credited unless a reasonable explanation is offered for the inconsistency);*See Piscione v. Ernst & Young L.L.P.*,

171 F.3d 527, 532 (7th Cir. 1999)( stating that "[i]t is a well-settled rule of this Court that a plaintiff cannot create an issue of material fact merely by manufacturing a conflict in his own testimony by submitting an affidavit that contradicts an earlier deposition, and, in turn, defeat a defendant's motion for summary judgment." (citations omitted)). Pursuant to Local Rule 56.1 Hubbard admits that "[o]ver the course of his employment, Hubbard was disciplined for failing to meet production standards 204 times." (CSF 32). Hubbard does not directly deny the allegation, but instead offers an additional allegation in his favor that he is as good a worker as other employees which does not directly contradict the assertion, but allows Hubbard to give the appearance that he is denying the fact without actually doing so. *See Jankovich v. Exelon Corp.*, 2003 WL 260714, at *5 (N.D. Ill. 2003)(indicating that an evasive denial is an improper denial and thus the contested fact is deemed to be admitted pursuant to Local Rule 56.1).

In regards to Hubbard's termination, Hubbard admits pursuant to Local Rule 56.1 that on July 1, 2002 he was assessed his sixth step of progressive discipline and that unless he met the standard for eight consecutive days, the next time he missed the standard, Certified could terminate his employment. (CSF 44). Hubbard does not deny and therefore admits that "on August 11, 2002, Hubbard began work at 5:30 p.m. . . . and that around 11:00 p.m., after four and one-half hours of work,

8

Hubbard told Saban that his back locked up in the freezer." (CSF 47). Certified asserts in its 56.1 statement of material facts that Saban calculated Hubbard's production for the four hours that Hubbard worked before he was injured and determined that Hubbard's percentage was 73%. (CSF 52). Hubbard improperly attempts to deny this fact. Again he offers new facts regarding contradictory printouts to give the appearance that his denial is legitimate, but Hubbard fails to contradict Certified's assertion in fact number 52. Since Hubbard does not deny the statement made by Certified he admits that his percentage on August 11, 2002 was 73%. Also, in regards to the allegedly inconsistent printouts, both of the printouts indicated percentages well below the 85% minimum and Certified offers a reasonable explanation for the two printouts. (Reply CSF 52). Certified asserts in its material statement of facts that Hubbard's failure to meet the 85% minimum on August 11, 2002 was the seventh time and he had reached the termination step. (CSF 53). Hubbard apparently felt obligated to deny this fact. However, the above mentioned admissions establish that this fact is true.

Certified asserts that when an employee works at least two hours during a shift and fails to meet the productivity standard he is given a step of progressive discipline. (CSF 18). Hubbard admits this fact. Hubbard contends that mitigating facts can prevent a step discipline if an employee fails to meet the productivity

9

standard, however, he bases his belief on the manner in which Luttrell was treated which is a unique situation. ( R CSF 21). Hubbard fails to provide any legitimate basis for his denial of Certified's claim that if Certified employees fail to finish a shift because of an injury, they may still received a step discipline for the portion of the shift that they worked. (CSF 27). Hubbard merely cites broadly to several exhibits. Certified acknowledges that a worker would not be evaluated for the productivity standard for any portion of his work done while he was injured. (CSF 28). As indicated above Hubbard admits that he worked approximately four and a half hours before his back locked up and he went to the doctor. (CSF 47).

Hubbard also attempts to introduce as a red herring allegations that he failed to meet the productivity standard on August 11, 2002 because he was not properly trained. Hubbard claims that his problems meeting the productivity standards were because the freezer isles were renumbered in 1999 and Hubbard was not retrained. However, Hubbard admits that he is not certain whether any employees received additional training once the freezer was renumbered and admits that the basis for his belief is a statement which is hearsay which was told to him by a former supervisory trainee. (CSF 39, 40). In regards to fact number 39 Hubbard makes general reference to an affidavit but fails to specify which portion is applicable. Therefore, it is clear that Certified was justified in terminating Hubbard's employment after he

reached the seventh step on August 11, 2002 because Hubbard was not meeting Certified's legitimate expectations and that no reasonable jury could find otherwise.

### B. Similarly Situated Employees

Employees are similarly situated if their "performance, qualifications and conduct" are substantially similar. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000). Employees are generally similarly situated if "the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002) (quoting *Radue*, 219 F.3d 617-18).

Hubbard claims in his answer to Certified's motion for summary judgment that Dave Luttrell ("Luttrell") and Richard Jesup ("Jesup") are similarly situated employees that were treated more favorably than him. It is somewhat appalling that Hubbard would compare himself to Luttrell and complain about favorable treatment. Luttrell has cerebral palsy and in 2001 he was having trouble meeting production standards. Hubbard admits that Luttrell requested an American with Disabilities accommodation and while Certified considered the request it agreed to temporarily

11

lessen Luttrell's percentage requirement. (CSF 75-77). Hubbards denials of facts 75 to 77 again contain evasive responses that do not support his denials. In response to Certified's assertion in fact 75 that it gave leeway to Luttrell while determining whether he was disabled, Hubbard asserts that Certified never found that Luttrell was disabled and thus entitled to a permanent accommodation. In response to Certified's assertion in fact number 77 that after Luttrell had his surgery he was subject to the same standards as other employees, Hubbard asserts that Certified does not recognize Luttrell as disabled. Hubbard admits that after Luttrell returned from medical leave in the spring of 2002 he was put back on the same standards as other selector/loaders. (CSF 77). Hubbard complains that Luttrell was not disciplined in certain instances when he failed to meet requirements. However, given Luttrell's condition, it would not be unreasonable for Certified to give him some extra lee-way. Such an allowance would not necessarily be because of Luttrell's race. Luttrell's case is clearly a special situation and is not directly comparable to Hubbard's situation.

In regards to Jesup, Hubbard contends that Jesup, was terminated for failing to meet production standards, but he was reinstated after he found out that he was not properly trained. Certified correctly points out that the record is clear that Jesup was not terminated for failing to meet production standards. ( R HSF 31 ). Hubbard

12

admits that Jesup worked in the grocery warehouse and was terminated for failing to follow procedures rather than for failing to meet the productivity standards. (CSF 81). Hubbards denial is improper as he cites broadly to en entire exhibit and does not specify the pertinent portion that would support his denial. Jesup worked in a different warehouse than Hubbard and under a different supervisor and manager than Hubbard.

In his answer to Certified's motion for summary judgment Hubbard also claims that Tom Cronin, Chris Walsh, Jason Pepersiki, Darryl Kaczmarek, and Noel Waitkus were similarly situated white employees that suffered work related injuries that were excused from work for the remainder of the day and were not discharged. Certified acknowledges that a worker will not receive a disciplinary step if his productivity is limited because he worked with an injury. However, Hubbard admits that after 2000 there was not one instance when one of the employees other than Luttrell worked more than two hours, did not make the productivity standard, was injured, and did not receive a disciplinary step. (CSF 70). Also, the record is clear that when an employee was injured and could not finish his shift, Certified routinely evaluated the portion of his shift that he worked before the injury and gave a disciplinary step if the mandatory minimum productivity standard was not met. In this case Hubbard admits that he worked for four and a half hours before his back

13

locked up. Therefore, Hubbard has failed to point to a similarly situated employee outside the protected class that was treated more favorably.

### C. Pretext

Certified presents a legitimate non-discriminatory reason for Hubbard's termination. Certified contends that Hubbard failed to meet the productivity standard on August 11, 2002 and moved to the seventh step. As stated above, once an employer presents a legitimate non-discriminatory reason for the adverse employment action, the employee must show that the reason is actually a pretext. *Hildebrandt*, 347 F.3d at 1030. Hubbard must not only show that the given reason is untrue but also that the reason is a pretext specifically intended to allow Certified to discriminate against Hubbard because of his race. *See Venturelli v. ARC Comty. Servs., Inc.*, 350 F.3d 592, 601 (7th Cir. 2003)(stating that a plaintiff must show that the reason is a "mere pretext for discrimination.").

Hubbard has not presented any evidence that would lead a reasonable jury to conclude that Certified terminated his employment because of his race. Hubbard admits pursuant to Local Rule 56.1 the truthfulness of Certified's statement of fact number 93 that he "never heard Stejskal, or any other manager, make any derogatory comments about black employees." (CSF 93). In yet another attempt to offer new

14

allegations to make it appear as though Hubbard has a basis to deny the fact number 93 Hubbard points to a statement allegedly made by Fred Simon. Hubbard contends that Simon told him to clean up the urine in the bathroom, but a reasonable jury could not conclude that the alleged statements made by Simon were connected to Hubbard's race. Certified contends in statement of fact number 95 that no other African-American employees were discriminated against since Hubbard was employed at Certified. (CSF 95). Hubbard offers nothing more than his baseless speculation in support of his denial and thus fact number 95 is deemed to be admitted. In addition Hubbard merely indicated that he is aware of some other employees that complained about what they perceived as discrimination, not that they actually suffered discrimination. Therefore, even if Hubbard could prove a *prima facie* case he cannot show that the reason given by Certified for his termination was a pretext. Therefore, we grant Certified's summary judgment motion on the Title VII claim.

II. Workers' Compensation Retaliation Claim

The Supreme Court of Illinois has recognized an independent cause of action based upon a retaliatory discharge for the filing of an IWCA claim. *Borcky v. Maytag Corp.*, 248 F.3d 691, 695 -96 (7th Cir. 2001); *Kelsay v. Motorola*, 384

N.E.2d 353, 357 (Ill. 1978). To establish a retaliatory discharge claim under Illinois law, a plaintiff must prove that: " (1) that [he] was an employee before the injury; (2) that [he] exercised a right granted by [the Illinois] Workers' Compensation Act; and (3) that [he] was discharged and that the discharge was causally related to [his] filing a claim under the Workers' Compensation Act." *Borcky*, 248 F.3d at 696 (quoting *Clemons v. Mechanical Devices Co.*, 704 N.E.2d 403, 406 (Ill. 1998)). Under Illinois law the burden of proof remains with the plaintiff, but it is not entirely clear whether or not the *McDonnell Douglas* burden shifting method applies in retaliation cases that are litigated in the federal courts. *Id.* at 696 n. 5.

Hubbard does not provide sufficient evidence upon which a reasonable jury could rely in finding that his termination was causally related to the filing of the IWCA charge. As indicated above, Certified has provided a reasonable explanation for Hubbard's termination. Also, it was nothing new for Hubbard to file an IWCA claim and thus there is no particular reason why the last IWCA claim should provoke a termination. Hubbard does not properly deny and thereby admits that he has filed twenty-five IWCA claims during his employment with Certified. Certified did not terminate Hubbard after any of the other IWCA claims were filed. Although Hubbard contends that his termination was in retaliation for his final IWCA claim, Hubbard admits that he was never otherwise disciplined for being injured or for

16

filing IWCA claims. (CSF 100). The fact that there was no causal connection between Hubbard's final IWCA claim and his termination is indicated by the lack of evidence showing that Saban or anyone else at Certified was aware that Hubbard intended to file an IWCA claim when the decision was made to terminate his employment. In fact Hubbard, by failing to provide any supporting citation for his denial of Certified's statement of fact number 101, admits that neither Saban nor Mike Swift were aware at the time that Hubbard was terminated that Hubbard intended to file an IWCA claim. Therefore, Hubbard has failed to supply sufficient evidence upon which a reasonable jury could find in his favor and conclude that there was a causal connection between his filing of an IWCA claim and his termination. Thus, we grant Certified's motion for summary judgment on the IWCA retaliatory discharge claim.

### III. Requests for Admissions

We note that Hubbard tries to make much of his request for admissions and contends that Certified's failure to respond is an admission that Certified discriminated against Hubbard because he filed IWCA claim and because he filed his EEOC charge. First of all we are not convinced that the facts included in Hubbard's requests for admissions are properly deemed to be admitted by Certified.

Secondly, Hubbard has not brought a Title VII retaliation claim in the instant action and thus it is immaterial whether or not Certified retaliated against him because he filed an EEOC charge. Hubbard's confusion on this matter is further evident by the fact that he argues in support of a Title VII retaliation claim instead of a discrimination claim in his motion for summary judgment, while simultaneously arguing in support of a discrimination claim instead of a retaliation claim in his answer to Certified's motion. Hubbard has not asserted a Title VII retaliation claim in his complaint and a summary judgment motion, brought after the close of discovery, is not the proper juncture to introduce new claims. Also, even if Hubbard were allowed to bring a Title VII retaliation claim we would grant Certified's motion for summary judgment on the claim. Hubbard has not shown that he was meeting the legitimate expectations of Certified or that similarly situated employees were treated more favorably, and he has not offered sufficient evidence for a reasonable jury to conclude that the reason for his termination was a pretext for retaliation. *See Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7$^h$ Cir. 2002)(stating analysis for a Title VII retaliation claim).

## CONCLUSION

Based on the foregoing analysis, we grant Certified's motion for summary judgment and deny plaintiff Hubbard's motion for summary judgment.

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　Samuel Der-Yeghiayan
　　　　　　　　　　　　　　　　　　　United States District Court Judge

Dated: March 16, 2004